1

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                           FOR THE DISTRICT OF ARIZONA

8

9   Ronald Lee Collins,                    )   No. CIV 09-1230-PHX-DGC (DKD)
                                           )
10              Petitioner,                )   **REPORT AND RECOMMENDATION**
                                           )
11  vs.                                    )
                                           )
12  Charles L. Ryan, et al.,               )
                                           )
13              Respondents.               )
    _____)

14

15  TO THE HONORABLE DAVID G. CAMPBELL, U.S. DISTRICT JUDGE:

16          Ronald Lee Collins filed a petition for writ of habeas corpus on June 4, 2009,

17  challenging his convictions in Maricopa County Superior Court for two counts of child

18  molestation, and the imposition of consecutive terms of imprisonment totaling 40 years.  He

19  argues three grounds for relief:  (1) a violation of his due process rights; (2) the ineffective

20  assistance of counsel; and (3) a violation of the Eighth Amendment prohibition against cruel

21  and unusual punishment.  Respondents contend that Collins' federal petition is untimely.  In

22  the alternative, Respondents argue that most of his claims are procedurally defaulted, and the

23  only non-defaulted claim is without merit.  Because the Court agrees that the petition is

24  untimely, and that Collins has not established that he is entitled to equitable tolling, it

25  recommends that Collins' petition be denied and dismissed with prejudice.

26                                   **BACKGROUND**

27          The facts supporting the convictions are summarized in the court of appeals decision:

28          Defendant was indicted on two counts of child molestation.  The victim
            is Defendant's stepdaughter.  The incidents that gave rise to the charges took
            place on or between October 1, 2000 and April 1, 2002 when the victim was

either eleven or twelve years old. The victim testified at trial that Defendant touched her vagina on two occasions.

On both occasions, Defendant called her into his room so that he could "check" her. Once in the room, Defendant asked her to pull down her pants, lay down on the bed and spread her legs open. The victim complied, whereupon Defendant rubbed his finger up and down on her vagina for one to five minutes. The victim recalled that while he was touching her, Defendant told her that if she did not start cleaning better she would get an infection and that on the second occasion, after Defendant touched her, he took his finger and showed a white substance that he removed from her vagina and told her that she needed to clean better. The victim's mother was present on one occasion. The victim never asked Defendant to touch her vagina, admitted that she was not very close to Defendant, and stated that she was frightened by him.

Defendant was arrested on January 7, 2003 by Phoenix Police Detective Jerry Barker. Detective Barker interviewed Defendant the day before and the videotape of the interview was admitted as a trial exhibit. Over the course of the interview, Defendant made many inconsistent statements. For instance, he initially told Detective Barker that he never touched the victim's vagina but rather that his wife, the victim's mother, did. Later, he stated that he had cleaned the victim's vagina "maybe once or twice," with a baby wipe and that this was done at his wife's direction when she was present. Defendant finally told Detective Barker that he had cleaned and inspected the victim's vagina because he had observed her scratching herself and because she "doesn't clean herself good enough." Over the course of the interview, Defendant used the word "a couple" or "twice" to refer to the time he touched the victim's vagina.

Defendant also articulated contradictory rationales for touching the victim. He initially told Detective Barker that the reason he cleaned the victim's vagina was to remove a substance that appeared to be soap. However, he later controverted this statement when he stated that his concern was that she was not using soap.

Defendant also told Detective Barker that he had taken the victim to a physician for vaginal itching and that the doctor told him not to be concerned because the itching was due in part to the victim starting to grow pubic hair. However, Defendant could not recall the doctor's name, there was no record that they ever went to a doctor, and both the victim and her mother denied ever visiting a physician for vaginal itching.

At trial, the victim, her mother, Detective Barker and Defendant testified. Defendant admitted that he touched the victim's vagina on one occasion when his wife was present and was breast-feeding their youngest child. He stated that his wife told the victim to get on the bed and take her pants off so that she could see what the problem was. After doing so, Defendant observed a discharge that was "white, almost a yellowish, [and] kind of looked like soap" on the top of her vagina and his wife directed him to wipe it off, which he did with his hand, and not a baby wipe as he had told Detective Barker during their interview.

Defendant further testified that a few days after this incident, he was present when the victim had recently exited the shower and asked her if she had cleaned herself. Defendant asserted that she pulled her pants down, told

- 2 -

him the redness was all gone and that she was cleaning herself the way her mother had instructed. Defendant claimed that he did not touch her during this exchange.

Defendant acknowledged that it was not "normal" for him to touch his twelve-year-old stepdaughter's genital area without her approval. However, he maintained that his primary reason for touching the victim was to help her and that he would not have done so if his wife had not told him to "wipe it off and show her."

(Doc. #15, Exh CC at 2-5).

In sentencing Collins to consecutive twenty-year terms, the trial court found as aggravating factors (1) that Collins abused his position of trust, and (2) that his stepdaughter's suffering was extreme (*Id.* at 8-9). On direct review, the court of appeals affirmed the convictions but remanded for resentencing in light of the recent *Blakeley* decision (*Id.*). On remand, supplemental briefing was ordered, and the case was eventually stayed pending the Arizona appellate courts' resolution of *Blakeley* issues in another case. (*Id.*, Exh DD-FF). The State petitioned the supreme court for review of the court of appeals' decision; review was granted and remanded to the court of appeals for reconsideration in light of *State v. Martinez*, 210 Ariz. 578 (2005) and *State v. Henderson*, 210 Ariz. 561 (2005) (*Id.*, Exh GG-II). On February 9, 2006, following supplemental briefing, the court of appeals affirmed the sentences (*Id.*, Exh JJ-MM).

On April 25, 2006, Collins filed a pro se Notice of Post Conviction Relief; counsel was appointed and filed a Notice of Completion of Review finding no colorable claims (*Id.*, Exh PP, QQ). Collins filed a timely pro se petition, arguing his innocence and the ineffective assistance of counsel (*Id.*, Exh RR). On June 18, 2007, the trial court denied post-conviction relief (*Id.*, Exh UU). Collins did not petition for review of the trial court's decision (*Id.*, Exh XX; Doc. #1 at 5). On December 15, 2008, almost one and one-half years later, Collins filed a second petition for post-conviction relief; on January 22, 2009, the trial court dismissed the application as untimely, precluded and without merit (*Id.*, Exh VV-XX). Collins filed his federal petition on June 4, 2009.

Collins was required to file his federal petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time

for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Jimenez v. Quarterman*, 129 S.Ct. 681, 685 (2009). However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *See* 28 U.S.C. § 2244(d)(2). Collins' conviction became final on April 21, 2006, following the expiration of the 30-day period in which he could have petitioned the Arizona Supreme Court to review the memorandum decision. Absent any statutory tolling, he was required to file his federal petition on or before April 21, 2007.

On April 25, 2006, four days after the limitations period began, Collins filed a Notice of Post-Conviction Relief, which tolled the one-year period. *See Isley v. Arizona Dept. of Corrections*, 383 F.3d 1054, 1055-56 (9th Cir. 2004). The limitations period began to run again on June 18, 2007, when the trial court denied post-conviction relief and from which he did not petition for review. *See Hemmerle v. Schriro*, 495 F.3d 1069, 1074 n. 4 (9th Cir. 2007). Therefore, he was required to file his federal petition within 365 days of that date minus the four days already lapsed, or no later than June 13, 2008. His petition, filed almost one year later, on June 4, 2009, is untimely. Collins' second notice of post-conviction relief, filed six months after the expiration of the one-year limitations period, does not restart the clock. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

Assuming that equitable tolling is available to Collins, *see Bowles v. Russell*, 551 U.S. 205, 209-15 (2007), the Court concludes that he is not entitled to such tolling. He has not demonstrated that he had been pursuing his rights diligently and the existence of any extraordinary circumstances which prevented him from timely filing his petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 418-19 (2005). Collins did not file a Reply to the Answer. In addition, he asserts in his petition that it is timely filed. However, he mentions in his petition that he had "[v]ery limited access to any legal paperwork statutes" (Doc. #1 at 11). A lack of legal sophistication by a pro se petitioner is not, by itself, an extraordinary circumstance warranting equitable tolling. *See Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). In any event, it did not prevent him from timely filing a notice of post-conviction relief and

a *pro per* petition. He also cites "poor physical health" but does not contend that this prevented him from timely filing his petition.

**IT IS THEREFORE RECOMMENDED** that Ronald Lee Collins' petition for writ of habeas corpus be **denied and dismissed with prejudice** (Doc. #1).

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 24th day of March, 2010.


_____
David K. Duncan
United States Magistrate Judge